IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAVID C. HOLMES, | ) CASE NO. 5:07 CV 420 |
| Plaintiff, | ) |
| | ) MAGISTRATE JUDGE |
| v. | ) WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| Defendant. | ) |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, David C. Holmes, for disability insurance benefits and supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Holmes had severe impairments consisting of degenerative joint and disk disease of the cervical and lumbar spine, reported history of atypical seizures, controlled hypertension, atypical chest pain, controlled reflux disease, obesity, and controlled sleep apnea.[1] The ALJ made the following finding regarding Holmes's residual functional capacity:

> The claimant retains the residual functional capacity to perform light work, with occasional postural limitations, seizure precautions from work at heights or involving dangerous machinery, and with no climbing of ladders, ropes, or

---

[1] Transcript ("Tr.") at 23.

>scaffolds. He is able to lift and/or carry 10 pounds frequently and 20 pounds occasionally, and to sit, stand, and/or walk for 6 hours per day. In the alternative, giving the claimant some benefit of doubt I will hypothetically also limit him to jobs allowing him to sit or stand/walk as needed to relieve pain or discomfort.[2]

The ALJ determined that the above-quoted residual functional capacity precluded Holmes from performing his past relevant work.[3]

Based on the answer to a hypothetical question posed to the vocational expert at the hearing incorporating the above-quoted residual functional capacity, the ALJ decided that a significant number of jobs existed locally and nationally that Holmes could perform.[4] He, therefore, found Holmes not under a disability.[5]

Holmes asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Holmes asserts two issues for decision in this case:

- Whether the ALJ's determination that Holmes can perform a range of light work is supported by substantial evidence.

- Whether evidence submitted by Holmes after the ALJ's decision warrants a remand.

I conclude that substantial evidence supports the ALJ's residual functional capacity finding. Further, I conclude that the evidence submitted subsequent to the ALJ's decision was not material to the applications under consideration and does not warrant a remand. The

---

[2] *Id.*

[3] *Id.*

[4] *Id.* at 23-24.

[5] *Id.* at 24.

Commissioner's decision to deny disability insurance benefits and supplemental security income, therefore, must be affirmed, and the motion to remand must be denied.

## Analysis

**1.    Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[6]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.    Substantial evidence supports the ALJ's residual functional capacity finding.**

At the outset, I observe that the ALJ here incorporated substantial limitations into his residual functional capacity finding. The ALJ limited Holmes to light work, which exertionally he defined as "able to lift and/or carry 10 pounds frequently and 20 pounds

---

[6] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

occasionally, and to sit, stand and/or walk for 6 hours per day."[7]  He further limited the capacity for walking by including a sit or stand/walk option "as needed to relieve pain or discomfort."[8]  Although not expressly mentioned in the residual functional capacity finding, the vocational expert testified that the use of a cane would not significantly erode the number of jobs available for a person capable of light work with a sit/stand option.[9]  Additionally, the ALJ provided for occasional postural limitations and various seizure precautions.[10]

Holmes challenges this residual functional capacity finding for two reasons.  First, he argues that the ALJ should have included greater limitations on standing and walking.  He points to the language in the regulations providing that light work may require "a good deal of walking or standing."[11]  This argument overlooks the substantial limitation on standing or walking incorporated into the residual functional capacity finding by the inclusion of the sit/stand option.  As the vocational expert testified, "with a sit/stand option, there really isn't an expectation of being able to ambulate."[12]  The vocational expert went on to explain that taking into consideration a sit/stand option and Holmes's use of a cane, there would nevertheless be a significant number of jobs categorized as light both locally and nationally

---

[7] Tr. at 23.

[8] *Id.*

[9] *Id.* at 51.  Specifically, the vocational expert testified that "with a sit/stand option, there really isn't an expectation of being able to ambulate."  Tr. at 51.

[10] *Id.* at 23.

[11] 20 C.F.R. §§ 404.1568(b) and 416.968(b).

[12] *Id.* at 51.

that Holmes could perform.[13] The ALJ, therefore, properly factored in limitations on Holmes's ability to stand and walk.

Second, Holmes maintains that the residual functional capacity finding should have included some limitations on the use of his hands. The evidence, however, does not support such limitations. In support of additional upper extremity limitations, Holmes points to a February, 2002, EMG nerve conduction study, which revealed mild to moderate median neuropathy consistent with carpal tunnel syndrome and mild to moderate ulnar neuropathy across his right elbow.[14] He also cites an April, 2003, rehabilitation record, listing goals to increase his cervical range of motion.[15] These records, however, do not further his case because both pre-date the alleged October 24, 2003, onset date.[16] There is no record of any further treatment, evaluations, or limitations following these pre-onset notations.

Holmes also points to records documenting bilateral hand tremors and shaking, which he maintains warrant additional upper extremity limitation.[17] Review of the November, 2003, emergency room report shows that Holmes reported hand shaking[18] and the attending physician describing him as very fidgety and shaking his hand.[19] On examination, however,

---

[13] *Id.* at 50-51.

[14] *Id.* at 222.

[15] *Id.* at 370.

[16] *Id.* at 88, 510.

[17] *Id.* at 305, 309-10, 385-86.

[18] *Id.* at 305.

[19] *Id.* at 309.

Holmes exhibited normal upper extremity strength, grip, and sensory function.[20] Following testing, the attending physician suspected that Holmes's hand shaking was caused by anxiety, and he did not believe that further intervention was warranted.[21]

Holmes additionally cites a subsequent report to a consulting neurologist describing problems with hand shaking.[22] While Holmes reported this symptom to the neurologist, review of the neurologist's examination showed mostly normal clinical findings.[23] Ultimately, this consulting neurologist, Jay Berke, M.D., suggested a non-neurological explanation for these symptoms and did not issue any upper extremity limitations.[24] The ALJ, therefore, reasonably made the decision to include no limitations on use of the hands in the residual functional capacity finding.

Viewing the record as a whole, I must conclude that the ALJ's residual functional capacity finding fairly characterizes Holmes's work-related limitations in light of his impairments and must be affirmed.

**3.     The evidence submitted after the ALJ's decision does not constitute material evidence justifying a remand.**

Holmes requests remand of his case under sentence six of 42 U.S.C. § 405(g) for the ALJ to consider evidence generated after the ALJ's decision.

---

[20] *Id.*

[21] *Id.* at 310.

[22] *Id.* at 385-86.

[23] *Id.*

[24] *Id.*

Such evidence may be considered only to determine whether it merits a remand.[25] "Sentence six" of 42 U.S.C. § 405(g) permits a reviewing court to remand, without ruling on the merits, if new and material evidence is submitted, and the claimant shows good cause for failing to introduce this evidence during the prior proceeding.[26]

Since the medical evidence at issue came into being after the ALJ's decision, the "new" and "good cause" requirements for a remand are not at issue. The question here is whether this evidence is material. "Materiality" is defined as a reasonable probability that the ALJ would have rendered a different decision if the evidence had been available for consideration.[27] The claimant bears the burden of showing that a sentence six remand is proper.[28] All three criteria must be met in order to satisfy a sentence six remand.[29]

In support of his argument for remand, Holmes points to a July, 2006, emergency room report questioning whether he had a stroke[30] and a September, 2006, right knee arthroscopy operative report.[31]

---

[25] *See*, *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

[26] 42 U.S.C. § 405(g) (sentence six); *see also Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

[27] *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990).

[28] *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 553-54 (6th Cir. 1984).

[29] 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).

[30] Tr. at 600-01, 626-39.

[31] *Id.* at 677.

With respect to Holmes's possible July, 2006, stroke, he claims that this record is material because "the possibility of a stroke can help explain some of Plaintiff's earlier symptoms," and, citing, for example, a 2003 brain MRI documenting a remote infarction or underlying white matter lesion.[32] This statement, however, is mere speculation, and review of the July, 2006, records simply does not support his assertion. Notably, the brain MRI done in July of 2006 showed no stroke and did not reveal the infarct or lesion referred to in the 2003 MRI.[33] The records of the July, 2006 incident, therefore, do not create a reasonable probability that the ALJ would have decided the case differently.

The same reasoning applies to the September, 2006, right knee arthroscopy procedure.[34] Records dating back to Holmes's initial fall in May, 2004, do not show any physician at that time recommending a surgical procedure for his right knee symptoms.[35] While Holmes may have had some right knee issues during the relevant time period, this post-decision arthroscopy procedure documents a worsening of the knee condition, not a basis for remand.[36] Further, as the limitations imposed in the residual capacity finding and

---

[32] *Id.* at 389. ECF # 17 at 14.

[33] Compare Tr. at 398 with *Id.* at 626-27.

[34] Tr. at 677.

[35] *Id.* at 422.

[36] *Sizemore*, 865 F.2d at 712 ("Evidence which reflected applicants' aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began. Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition.").

-9-

the hypothetical to the expert carried "no expectation of [Holmes] being able to ambulate,[37] no reasonable probability exists that the September, 2006, records would have resulted in a different outcome.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Holmes had no disability. Accordingly, the decision of the Commissioner denying Holmes disability insurance benefits and supplemental security income is affirmed. Further, Holmes's motion for a remand under sentence six of 42 U.S.C. § 405(g) for consideration of medical evidence generated after the ALJ's decision is hereby denied.

IT IS SO ORDERED.

Dated: April 17, 2008                                     s/ William H. Baughman, Jr.
                                                          United States Magistrate Judge

---

[37] *Id.* at 51.